Hannah SIMMS, Appellant,

v.

Paul W. SCOTT and Joseph L. Simms, Appellees.

Court of Appeals of Kentucky.

April 28, 1961.

J. Earl Dearing, Louisville, for appellant.

J. L. Richardson, Jr., Wm. O. Guethlien, A. J. Deindoerfer, Louisville, for appellees.

STEWART, Judge.

This action originated as an automobile property damage claim by Paul W. Scott against Joseph L. Simms, arising from a collision of their respective automobiles on October 11, 1957, at 12th and Jefferson Streets in Louisville. Hannah Simms, wife of Joseph L. Simms, who was a passenger in his car at the time of the collision, intervened and asserted her claim for alleged personal injuries against both her husband and Scott.

The jury returned a verdict in favor of Hannah Simms against Scott, in the amount of $125, and absolved Joseph L. Simms from any liability to either his wife or Scott. Her motion for a new trial was overruled.

On this appeal Hannah Simms renews as a reason for reversal of the judgment the grounds urged in her motion for a new trial in circuit court, namely, that the dam-ages awarded her against Scott were inadequate and that the jury appeared to have rendered their verdict while under the influence of passion or prejudice and in disregard of the evidence and instructions of the court. This appeal is also taken against her husband.

Appellant sued the two appellees for $62,100. She averred she was entitled to recover $600 for medical expenses, $1,500 for loss of wages, $10,000 for permanent impairment to her earning capacity, and $50,000 for compensatory damages occasioned by her injuries and the shock resulting therefrom.

The circumstances in connection with the accident are that the two automobiles made contact with each other at an intersection. The collision at most was a minor one; the Scott car was barely moving and the Simms car was proceeding at a very low rate of speed. Appellant's husband testified that the meeting of the automobiles "was not a collision at all"; that the Scott car merely glanced across the front bumper guard of his car. This statement is borne out by the fact that the only damage done to the Simms car was that its bumper guards were knocked loose.

Following the mishap, appellant got out of her husband's car, walked over to a nearby fire station and asked that the police be called. She then came back and stood around at the site where the accident had happened, talking about it to the spectators who gathered at the scene. When two officers of the Louisville Police Department arrived, they asked if anyone was hurt. Both appellee Scott and appellee Simms, neither of whom apparently had received a scratch, stated that they were not hurt. Appellant likewise told the policemen she was not hurt. Appellee Scott testified he asked appellant if she was injured and she replied she was not. However, she denied she made this statement. Shortly after the police had completed their investigation the Simmses left the place of the accident and went to their home.

Appellant, who was never hospitalized, suffered no broken bones or torn ligaments. She testified she was treated after the accident by her personal physician, Dr. H. A. Maxwell, who she said saw her five times and later submitted a bill for $225. Dr. Maxwell, testifying about the amount of his bill, stated that his charges for the medical service rendered were for visits made on twenty-nine occasions which ranged over a period from October 11, 1957, to January 20, 1958. His $225 bill was sent to appellant at the request of her attorney on December 2, 1957; and it was brought out that, at that time, eleven of the supposed occasions on which Dr. Maxwell had treated appellant had not even occurred. The doctor attempted to explain this rather extreme manner of dealing with the patient by saying that the bill was founded in part on what he "estimated" he would have to do for appellant in the future.

The record is quite hazy as to what treatments Dr. Maxwell was supposed to have administered to appellant on these "twenty-nine occasions." At no time did he ever appear to do more for her than treat a superficial bump on her head, give her some shots, write out a prescription for certain pills and put some adhesive tape on her shoulder. Actually, there was evidence from which the jury might infer that on several of the occasions when Dr. Maxwell visited appellant, whether it was five times, as appellant herself said, or twenty-nine times, as Dr. Maxwell testified, he was helping her fill out an application for insurance benefits, rather than performing any medical services in her behalf.

Dr. Kenton D. Leatherman, an orthopedic specialist, saw appellant in December, 1957, but he gave her no treatment whatever and merely recommended that she continue under the same care which was being accorded by Dr. Maxwell. On another visit by Dr. Leatherman in January, 1958, according to his testimony, he discovered symptoms of bursitis in one of appellant's shoulders and he started giving her medication for that condition. Dr. Leatherman stated, however, that bursitis may develop in a person, aside from an accidental blow, from the ordinary daily use of the affected area and that such a disease is not necessarily the consequence of an accident.

■ In many cases we have said a verdict will not be disturbed for inadequacy of damages unless it is so small and disproportionate as to strike the mind at first blush as being the result of passion, prejudice or mistake. See Lawson v. Sitgraves, 299 Ky. 545, 186 S.W.2d 182, and Wilkins v. Hopkins, 278 Ky. 280, 120 S.W.2d 772. The reason is obvious. The jury has a unique opportunity to watch the parties and their witnesses, to hear their testimony and thus to make an on-the-spot evaluation of whether a party claiming injuries and resulting special damages is justly entitled to all, any part of, or none of the amounts alleged and demanded.

Furthermore, as the circuit judge is also present throughout the trial and has the same chance as the jury to hear the testimony and observe the demeanor of the witnesses and the parties, considerable latitude is accorded to him to determine whether a new trial should be granted. In Smith v. Bailey, 311 Ky. 118, 223 S.W.2d 582, 583, we said:

"The granting of a new trial on the ground asserted (inadequacy of the jury's award) is a matter for the exercise of judicial discretion by the trial Judge, and the power to overturn the jury verdict for this reason should be exercised * * * with great caution and only in exceptional cases."

In this case the jury evidently arrived at the opinion that but little, if any, injury was suffered by appellant as a result of the slight jar she experienced when the cars collided. Then, too, the medical evidence failed to establish that she was hurt to any extent by the accident; and the jury could well believe that when she developed bursitis in one of her shoulders this condition was not traceable to any injury she had received.

Nothing appears in the record which would indicate even remotely that passion or prejudice influenced the minds of the jury when their award was made. This is not a case where the verdict was based solely upon the proven amount of an item of special damages. Rather, it seems to us it is an instance where a jury, in the face of contradictory evidence, rendered a verdict for the total sum they believed the claimant was entitled to. This they had the authority to do.

Wherefore, the judgment is affirmed.